```
             IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
FAUZIA BAQAI,
                                *
     Plaintiff,
                                *
        v.                          CIVIL NO.:  WDQ-09-2135
                                *
TRI-STATE COMMUNITY HEALTH
CENTER, INC., et al.            *

     Defendants.                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

In this diversity action, Dr. Fauzia Baqai sued Tri-State Community Health Center, Inc. ("Tri-State"), Dr. Dale Wolford, and Jacque Wolford for breach of contract, fraud, and negligent misrepresentation. Pending is the Defendants' motion to dismiss Counts 1 and 2, or for summary judgment. For the following reasons, the motion will be denied.

I.   Background[1]

In 2005, Tri-State opened a Women's Health Center at the Memorial Hospital in Cumberland, Maryland ("the Center"). Compl. ¶ 2.  Dr. Wolford is a physician and the medical director

---

[1] For the motion to dismiss, the well-pleaded allegations in the Complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In the motion for summary judgment, the Court will draw inferences from the facts in the light most favorable to Baqai, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S. 574, 587 (1986).

of the Center.  *Id*. ¶ 8.  His wife, J. Wolford, is the office manager at the Center and controls scheduling and assignment of patients to the Center physicians.  *Id*. ¶¶ 4, 9.

In May 2007, Dr. Baqai entered a two-year employment agreement with Tri-State to work as an obstetrician and gynecologist at the Center.  *Id*. at Ex. 1 [hereinafter *Employment Ag.*].  Tri-State representatives and the Wolfords told Dr. Baqai before she entered the Employment Agreement that (1) Tri-State's policy was to "evenly distribute patients" among the Center physicians to ensure that each physician was able to maintain her level of compensation; (2) Tri-State honored a patient's choice of physician whenever possible, and patients who made no request were assigned to the Center physicians on a rotating basis; (3) she would be "as busy as [she wanted] to be" at the Center; and (4) Tri-State would advertise and promote her practice.  Compl. ¶ 12.

Under the Employment Agreement, the Initial Term of Dr. Baqai's employment was from October 1, 2007 to September 30, 2009; thereafter, the contract would renew automatically for one-year terms.  *Employment Ag.* § 2.1.  After her first six months of employment, Dr. Baqai's compensation was to be based on "relative value units" ("RVUs"),[2] which were reviewed

---

[2]  "The Relative Value Units will be calculated utilizing the McGraw-Hill system and reviewed quarterly.  The salary shall be

quarterly.  *Id*. § 3.1.  Tri-State could terminate Dr. Baqai before the end of the term for, *inter alia*:

> Personal misconduct of Physician or a breach of this Agreement that is not cured or being cured to [Tri-State's] reasonable satisfaction immediately upon notice from [Tri-State] to Physician of such misconduct *or* breach of such a serious nature as to render continued employment with [Tri-State] as [a] serious threat to the orderly conduct of [Tri-State's] affairs, whether such misconduct be of a personal or professional nature as reasonably determined by [Tri-State's] Executive Director.

*Id*. § 2.3(d) (emphasis added).  If terminated, Dr. Baqai would be prohibited from practicing medicine within a 20 mile radius of the Center for two years under the Covenant Not to Compete. *Id*. § 9.1.  The Employment Agreement also contained a merger clause:

> [t]his Agreement constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the Parties, or any of them with respect to the subject matter hereof, by and between, Tri-State and Physician.

*Id*. § 10.15

During her Initial Term, Dr. Baqai became dissatisfied with the assignment and scheduling of patients to the Center physicians.  Compl. ¶¶ 15-16.  With Tri-State directors, she raised her concerns about J. Wolford's practice of selectively scheduling patients to see Dr. Wolford, but they failed to address the issue.  *Id*.  On October 29, 2008, the Health

---

increased or decreased at that time in relation to the total number of prorated RVUs created." Employment Ag. § 3.1.

Resources and Services Administration ("HRSA")[3] held a meeting at Tri-State's Cumberland Center to review and discuss controlled assignment of patients; Dr. Wolford and Tri-State's executive director did not attend.  *Id*. ¶¶ 17.

In her October 31, 2008 letter J. Wolford informed Tri-State Executive Director Shelia DeShong that Dr. Baqai had threatened to stop treating Dr. Wolford's patients when she was on call.  Def.'s Mot. Ex. A (Shelia DeShong Aff. ¶ 5, Oct. 16, 2009).  The letter explained that Dr. Baqai had been mistakenly asked to do a consult for one of Dr. Wolford's patients while she was on call on October 30, 2008.  DeShong Aff. Ex. 3 at 2 [hereinafter *J. Wolford Letter*].  Although Dr. Baqai did as requested, Dr. Wolford performed the patient's surgery later that day.  *Id*.

The next morning, Dr. Baqai approached J. Wolford and said that she was "not hired to do Dr. Wolford's scutt work" and was "unwilling to see any established Dr. Wolford patient even if the patient were lying on the floor bleeding . . . [or] in a bed in need of medical attention."  *Id*. at 1.  After investigating these allegations, DeShong asked Dr. Baqai to explain the incident and her refusal to treat Dr. Wolford's patients.  DeShong Aff. Ex. 5 at 2 [hereinafter *Baqai Email*].  On November

---

[3]  The HRSA is a branch of the U.S. Department of Health & Human Services ("HHS").  Compl. ¶ 2.

5, 2008, Dr. Baqai replied by email that the Wolford's behavior at the Center was "unprofessional and [dis]courteous" and that J. Wolford "manipulated the system" to benefit Dr. Wolford. *Id.* at 1. Dr. Baqai admitted that she had refused to see Dr. Wolford's patients for a consult while she was on call but denied saying that she would not attend to emergency patients. *Id.* Dr. Baqai stated that she had "always covered the practice for anyone" and would "always cover emergencies at any time." *Id.* She denied saying that she "would not attend patients suffering from an emergency or in need of medical attention," "would step over one of [Dr. Wolford's injured] patients," or "would take any action to compromise patient health and safety." Fauzia Baqai Aff. ¶¶ 6-8, Oct. 31, 2009.

On November 13, 2008, Tri-State terminated Dr. Baqai effective immediately for cause under Section 2.3(d) of the Employment Agreement. Compl. Ex. 2 at 1 [hereinafter *Termination Letter*]. The Termination Letter stated that Dr. Baqai had violated Sections 1.2[4] and 1.10(g), (h), & (l)[5] by

---

[4] Section 1.2 states that Dr. Baqai must "at all times faithfully, industriously, and to the best of her ability, perform all duties that may be required of her by virtue of this employment to the reasonable satisfaction [of Tri-State]. . . [and] shar[e] on call for hospital call as well as office call for Obstetrics and Gynecology." Employment Ag. § 1.2. Section 1.3 states the on call schedule and requires Dr. Baqai to "provide on-call coverage as is necessary to provide care for patients of other physicians who perform services for [Tri-State]." *Id.* § 1.3.

refusing to see Dr. Wolford's patients and making statements that indicated she might "compromise patient health and safety." *Id.*  Another Center physician, Dr. Robert Shapiro, was terminated the same day.  Compl. ¶ 20.

On August 13, 2009, Dr. Baqai sued for: (1) breach of contract, (2) fraud, and (3) negligent misrepresentation.  Paper No. 1.  On October 19, 2009, the Defendants filed a motion to dismiss or for summary judgment on Counts 1 and 2 and answered Count (3).  Paper Nos. 7 & 8.

II. Analysis

    A.    Standards of Review

        1.    Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) tests the legal sufficiency of a complaint, but

---

[5]  Section 1.10 states in part that:

> (g) Physician shall use her best efforts to maintain a good working relationship with all employees of [Tri-State], as well as with Physician's professional peers in providing services under this Agreement.
> (h) Physician shall use her best efforts to establish and maintain appropriate channels of communication with [Tri-State] administrative officers and employees . . .
> (l) Physician shall perform such other duties as [Tri-State] may reasonably request and that are commensurate with employment as a clinical physician and the duties of her position.

Employment Ag. § 1.10.

does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)).  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

7

complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

    2.   Rule 56

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must "view the

evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

Generally, "summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Under Rule 56(f), the court may deny summary judgment or order a continuance "if the nonmovant shows through affidavits that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Id.*; Fed. R. Civ. P. 56(f).  The Rule 56(f) affidavit must "particularly specify legitimate needs" for additional discovery and the evidence sought must be capable of creating a genuine issue of material fact. *Malghan v. Evans*, 118 Fed. Appx. 731, 734 (4th Cir. 2004); *see also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006).

B.   Count I:   Breach of Contract[6]

Dr. Baqai contends that Tri-State terminated her without cause in violation of the Employment Agreement and the implied covenants of good faith and fair dealing.  Compl. ¶¶ 21, 25-27.  Tri-State argues that Dr. Baqai's undisputed refusal to see Dr. Wolford's patients while she was on call was just cause for her termination.  Def.'s Mot. 6-7.  Dr. Baqai contends that material facts are in dispute regarding her willingness to treat Center patients.  Pl.'s Opp. 4-6.

The parties dispute whether Dr. Baqai (1) said that she would not treat emergency patients, (2) told J. Wolford that she would not treat Dr. Wolford's patients in distress, and (3) indicated a willingness to compromise patient health and safety.  The Defendants argue that none of these disputed facts is material because Section 2.3(d) permitted Tri-State to terminate Dr. Baqai solely for her undisputed refusal to see Dr. Wolford's patients while she was on call.

Section 2.3(d) permits Tri-State to terminate Dr. Baqai for a breach of the Employment Agreement "of such a serious nature as to render continued employment . . . a serious threat to the orderly conduct of [Tri-State's] affairs."  What constitutes a serious breach is to be "reasonably determined" by the Tri-State

---

[6]  As noted by Dr. Baqai, the Defendants appear to concede that Count 1 is adequately pled.  Pl.'s Opp. 6.  Thus, this claim will be considered under Rule 56.

Executive Director.  Here, Dr. Baqai was terminated for comments she made during a conversation with J. Wolford.  Drawing all inferences in favor of Dr. Baqai, a reasonable jury could find that this single statement--in the context of a heated discussion--was not a serious breach of the Employment Agreement.  A reasonable jury also might consider the disputed statements to be material to the seriousness of Dr. Baqai's alleged breach.  Accordingly, summary judgment will be denied.

    C.    Count II:  Fraud

To recover on her fraud claim, Dr. Baqai must show (1) a false representation to her by the Defendants; (2) made knowingly or with reckless indifference as to its truth; (3) for the purpose of defrauding her; (4) her justifiable reliance on the misrepresentation; and (5) a resulting compensable injury. *Moscarillo v. Prof'l Risk Mgmt. Servs.*, 398 Md. 529, 921 A.2d 245, 254 (Md. 2007).

        1.    Motion to Dismiss

Dr. Baqai contends that the Defendants knowingly made false representations about the patient distribution policies at the Center on which she reasonably relied when she entered the Employment Agreement.  Compl. ¶¶ 12, 31.  The Defendants argue that (1) Dr. Baqai's claim for fraud is barred by the parol evidence rule and (2) the pre-contractual promises were "mere puffery" and cannot constitute fraud.

11

a.   Parol Evidence Rule

Because "the parol evidence rule is not merely a rule of evidence but part of the law of contract," Maryland law controls in this diversity action. *Rock-Ola Mfg. Corp. v. Wertz*, 282 F.2d 208, 210 (4th Cir. 1960).  Under Maryland's parol evidence rule, a completely integrated written agreement will supersede all other communications and negotiations between the parties before the written contract. *Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358, 361-62 (Md. 1998).

This rule does not exclude parol evidence that a party was fraudulently induced to enter a contract. *Fowler v. Benton*, 229 Md. 571, 185 A.2d 344, 352 (Md. 1962).  When "fraud is alleged to have caused the execution of a written contract, a merger clause therein is not conclusive."  *Id*.  "A plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if (1) the written contract contains an integration clause and even if (2) the pre-contractual promises that constitute the fraud are not mentioned in the written contract." *Greenfield v. Heckenbach*, 144 Md. App. 108, 797 A.2d 63, 76 (Md. Ct. Spec. App. 2002), *cert. denied*, 370 Md. 269, 805 A.2d 266 (2002).

*Greenfield* distinguished between "general" and "specific" merger clauses. *Greenfield*, 797 A.2d at 75-76.  A specific merger clause identifies certain representations and "in the

12

plainest language announce[s] and stipulate[s] that [the party] is not relying on" them.  *Id.* at 128 (*quoting Danann Realty Corp. v. Harris*, 5 N.Y. 2d 317, 157 N.E. 2d 597, 599 (1959)).  If a party later seeks to introduce these specifically disclaimed pre-contractual representations as evidence of fraud, they may be barred by the parol evidence rule.  *Id.* at 129.  By contrast, a general merger clause states in broad terms that the written agreement is a complete integration and "does not bar parol evidence of pre-contractual fraudulent representations."  *Id.* at 130.

The Defendants argue that the Employment Agreement contained a specific merger clause that "expressly disclaim[ed] any reliance on pre-contractual oral representations."  Def.'s Reply 7.  But the Employment Agreement merger clause is almost identical to the *Greenfield* clause, which the Maryland court found to be a general merger clause.[7]  Because the Employment Agreement contained only a general merger clause, Dr. Baqai's fraud claim will not be barred.  *See Rubin Squared, Inc. v.*

---

[7] *See Greenfield*, 797 A.2d at 117 ("This Contract and any Addenda thereto contain the final and entire agreement between the parties, and neither they nor their agents shall be bound by any terms[,] conditions, statements, warranties or representations, oral or written, not herein contained.").

13

*Cambrex Corp.*, 2007 WL 2428485, at *6 (S.D.N.Y. 2007) (applying Maryland law).[8]

        b.    Mere Puffery

A misrepresentation is "a statement of an alleged existing fact, or facts, and not merely of some future or contingent event, or an expression of opinion as to the subject of the statement." *Schwartzbeck v. Loving Chevrolet, Inc.*, 27 Md. App. 139, 339 A.2d 700, 701 (Md. Ct. Spec. App. 1975).[9] Exaggerated statements that are mere "puffing" are not actionable. *First Union*, 838 A.2d at 442. But a "misrepresentation of one's own intention may constitute the misrepresentation of a present fact" and be actionable fraud. *Weisman v. Connors*, 312 Md. 428, 540 A.2d 783 (Md. 1988).

The Defendants' representations stated the present patient distribution policies at the Center and the intent of the

---

[8] Though a merger clause does not bar a cause of action in fraud, courts have "considered the [merger] clause to be significant evidence of the unreasonableness of reliance that, in combination with the other evidence, warrant[s] summary judgment." *Rubin Squared*, 2007 WL 2428485, at *6; *see also Greenfield*, 797 A.2d at 77-78. Because the merger clause is not conclusive evidence that Dr. Baqai's reliance was unreasonable, this Court will not dismiss Dr. Baqai's fraud claim based on the clause.

[9] An actionable representation "must be definite, and mere vague, general, or indefinite statements are insufficient, because they should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements." *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 838 A.2d 404, 442 (Md. Ct. Spec. App. 2003) (*quoting Fowler v. Benton*, 229 Md. 571, 185 A.2d 344, 349 (Md. 1962)).

Defendants to continue to operate according to those policies during Dr. Baqai's employment; if false, they are actionable. The motion to dismiss for failure to state a claim in fraud will be denied.

        2.   Motion for Summary Judgment

Dr. Baqai has requested additional time for discovery under Rule 56(f). Her affidavit states that she intends to seek information "regarding the motivation and recollection of the alleged witnesses, in addition to the true motivation and process leading to [her] wrongful termination from [the Center]." Baqai Aff. ¶ 11. Because intent is an element of fraud, the motives for the Defendants' alleged promises are material. The denial of summary judgment will permit discovery on this claim.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss or for summary judgment on Counts 1 and 2 will be denied.


<u>February 16, 2010</u>                      <u>        /s/                </u>
Date                                           William D. Quarles, Jr.
                                           United States District Judge