IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| FAUZIA BAQAI, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-09-2135 |
| TRI-STATE COMMUNITY HEALTH CENTER, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Dr. Fauzia Baqai sued Tri-State Community Health Center, Inc. ("Tri-State"), Dr. Dale Wolford, and Jacque Wolford for breach of contract, fraud, and negligent misrepresentation. Pending is the Defendants' motion for reconsideration of this Court's February 16, 2010 Order, denying their motion to dismiss or for summary judgment. For the following reasons, the motion will be denied.

I. Background

In 2005, Tri-State opened a Women's Health Center at the Memorial Hospital in Cumberland, Maryland ("the Center"). Compl. ¶ 2. Dr. Wolford is a physician and the medical director of the Center. *Id*. ¶ 8. In May 2007, Dr. Baqai was hired to work as an obstetrician and gynecologist at the Center. *Id*. at Ex. 1 [hereinafter *Employment Ag.*].

Under her Employment Agreement, Dr. Baqai could be terminated before the end of the term for, *inter alia*:

> breach of such a serious nature as to render continued employment with [Tri-State] as [a] serious threat to the orderly conduct of [Tri-State's] affairs, whether such misconduct be of a personal or professional nature as reasonably determined by [Tri-State's] Executive Director.

*Id.* § 2.3(d) (emphasis added). The Employment Agreement also contained a merger clause:

> [t]his Agreement constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the Parties, or any of them with respect to the subject matter hereof, by and between, Tri-State and Physician.

*Id.* § 10.15.

On October 30, 2008, Dr. Baqai was asked to do a consult for one of Dr. Wolford's patients while she was on call. DeShong Aff. Ex. 3 at 2 [hereinafter *J. Wolford Letter*]. Dr. Wolford performed the patient's surgery later that day. *Id.* The next morning, Center staff said that Dr. Baqai said she was "unwilling to see any established Dr. Wolford patient even if the patient were lying on the floor bleeding . . . [or] in a bed in need of medical attention." *Id.* at 1. Dr. Baqai later admitted that she had refused to see Dr. Wolford's patients for a consult while she was on call but denied saying that she would not attend to emergency patients. *Id.* Dr. Baqai stated that she had "always covered the practice for anyone" and would "always cover emergencies at any time." *Id.* She denied saying

2

that she "would not attend patients suffering from an emergency or in need of medical attention," "would step over one of [Dr. Wolford's injured] patients," or "would take any action to compromise patient health and safety."  Fauzia Baqai Aff. ¶¶ 6-8, Oct. 31, 2009.

On November 13, 2008, Tri-State terminated Dr. Baqai effective immediately for cause.  Compl., Ex. 2 at 1 [hereinafter *Termination Letter*].  The Termination Letter stated that Dr. Baqai had violated Sections 1.2 and 1.10(g), (h), & (l) by refusing to see Dr. Wolford's patients and making statements that indicated she might "compromise patient health and safety."  *Id*.

On August 13, 2009, Dr. Baqai sued for: (1) breach of contract, (2) fraud, and (3) negligent misrepresentation.  Paper No. 1.  On February 16, 2010, the Court denied the Defendants' motion to dismiss or for summary judgment on Counts 1 and 2 (the "February Order").  Paper No. 15.  On February 23, 2010, the Defendants moved for reconsideration of that Order.  Paper No. 16.

II. Analysis

A.  Standard of Review

Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision . . . may be revised at any time before the entry of a judgment

3

adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[1]  Thus, when warranted, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).

Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b). *See Mateti*, 2009 U.S. Dist. LEXIS 99869 at *9-10.  When a request for reconsideration merely asks the court to "change its mind," relief is not authorized. *Pritchard v. Wal-Mart Stores, Inc.*, 3 Fed. Appx. 52, 53 (4th Cir. 2001).  Similarly, a party cannot get reconsideration on the basis of case law or evidence available at the time of the court's order. *Mateti*, 2009 U.S. Dist. LEXIS 99869, at *12.

B.   Review of Tri-State's Termination Decision

In denying the Defendants' motion for summary judgment, this Court held that:

> Drawing all inferences in favor of Dr. Baqai, a reasonable jury could find that [her] single statement [that she would not see Dr. Wolford's patients while she was on call]--in the context of a heated discussion--was not a serious breach of the Employment Agreement.  A reasonable jury also

---

[1] *See Mateti v. Activus Fin., LLC*, 2009 U.S. Dist. LEXIS 99869, *9-10 (D. Md. Oct. 27, 2009).

4

> might consider the disputed statements to be material to
> the seriousness of Dr. Baqai's alleged breach.

Paper No. 15 at 11.  The Defendants argue that this holding contravenes Maryland law, which does not permit the jury to review the factual bases for termination but only to consider whether the employer acted in bad faith.  Def.'s Mot. 2-3.  Because there is no evidence of bad faith, the Defendants argue that a jury could not reasonably find that Dr. Baqai's termination was a breach of contract.  *Id*. at 3.

In reviewing an employment contract that permits termination for "just cause,"[2] Maryland law is clear that "the jury may not review whether the factual bases for termination actually occurred or whether they were proved by a preponderance of the evidence[.]"  *Towson Univ. v. Conte*, 384 Md. 68, 862 A.2d 941, 950 (Md. 2004).  Instead, "the proper role of the jury is to review the *objective* motivation, i.e., whether the employer acted in objective good faith and in accordance with a reasonable employer under similar circumstances when he decided there was just cause to terminate the employee."  *Id*. (emphasis in original).  The fact-finder is to determine whether the employer "base[d] its decision on a reasoned conclusion and

---

[2] The scope of the jury's review of a termination decision depends on whether the employment contract allowed termination at-will, subject to an employer's "satisfaction," or for "just cause."  Here, the parties appear to agree that Dr. Baqui's Employment Agreement should be reviewed as a just cause employment contract.  *See* Def.'s Mot. 2; Pl.'s Opp. 2-3.

5

facts reasonably believed to be true." *Id*. at 954. Thus, a jury may assess "the *objective reasonableness* of the employer's decision to discharge" even though the fact-finding prerogative underlying the decision to terminate employment remains with the employer. *Id*. at 951, 954.

The Defendants have the burden to show that the decision to terminate Dr. Baqai was objectively reasonable. *See Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 943 A.2d 30, 49 (Md. Ct. Spec. App. 2008). Making all reasonable inferences in favor of Dr. Baqai, the February Order held that a reasonable jury could find that Tri-State's decision to terminate her was not objectively reasonable. The Court did not invite the jury to question whether Dr. Baqai actually made the comments which allegedly precipitated her termination. Instead, the Court merely held that a reasonable jury "might consider the disputed statements to be material to the seriousness of Dr. Baqai's alleged breach." Because the Employment Agreement only permitted termination for a "serious" breach, the jury must assess whether it was objectively reasonable--given the facts reasonably believed by Tri-State--for Tri-State to find Dr. Baqai's actions "serious" enough to warrant termination.

    C.   General vs. Specific Merger Clauses

In the February Order, this Court compared the merger clauses in *Greenfield* and the Employment Agreement and held that

6

"[b]ecause the Employment Agreement contained only a general merger clause, Dr. Baqai's fraud claim [would] not be barred." Paper No. 15 at 13 (citing *Greenfield v. Heckenbach*, 144 Md. App. 108, 797 A.2d 63, 76 (Md. Ct. Spec. App. 2002), *cert. denied*, 370 Md. 269, 805 A.2d 266 (2002)). The Defendants argue that the addition of the word "supersedes" in the merger clause of the Employment Agreement materially distinguishes it from the merger clause in *Greenfield*. Def.'s Mot. 4.[3] But this word does not convert this clause from a general to a specific merger clause, which identifies and "in the plainest language announce[s] and stipulate[s] that [the party] is not relying on" specific pre-contractual representations. *Greenfield*, 797 A.2d at 128 (*quoting Danann Realty Corp. v. Harris*, 5 N.Y. 2d 317, 157 N.E. 2d 597, 599 (1959)).

III. Conclusion

For the reasons stated above, the Defendants' motion for reconsideration will be denied.

June 11, 2010　　　　　　　　　　　　　_____/s/_____
Date　　　　　　　　　　　　　　　　　William D. Quarles, Jr.
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] The Defendants cite *Patten v. Signator Ins. Agency*, 441 F.3d 230 (2006), in support of their argument that a merger clause containing the word "supersedes" is a specific merger clause. Def.'s Mot. 4-6; Def.'s Reply 2. *Patten* did not address the parole evidence rule or the distinction between general and specific merger clauses.

7